**Avo B. BETHEL and The Aetna Casualty and Surety Company, a Connecticut corporation, Appellants,**

v.

**Herbert A. THORNBROUGH, Appellee.**

**No. 7079.**

United States Court of Appeals
Tenth Circuit.

Dec. 4, 1962.

Gerald Harrison, Denver, Colo. (Tilly & Skelton and Lansford F. Butler, Denver, Colo., were with him on the brief) for appellants.

William P. Horan, Denver, Colo. (Burnett, Watson & Horan, Denver, Colo., were with him on the brief), for appellee.

Before BRATTON, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

This diversity action was brought in the Court below by appellants (plaintiffs) against appellee (defendant) to recover damages for personal injuries alleged to have been sustained in an automobile accident. A jury trial of the case resulted in a verdict in favor of the defendant.

The only two questions presented for our determination are whether the court below erred in instructing the jury as to a city ordinance requiring the drivers of vehicles to give a signal of their intention to stop and in permitting the personal physician of plaintiff, Avo B. Bethel, to testify at the trial over her objection on the ground of privilege.

The pertinent facts are as follows: On the day in question plaintiff Bethel, with her daughter as a passenger, was driving west on West 38th Avenue in Denver, Colorado. As she approached the intersection with Eliot Street, she met a truck traveling in the opposite direction on West 38th Avenue, which caused slush from the street to be splashed on the windshield of her car and temporarily obstructed her vision of the street ahead. Plaintiff Bethel testified that, prior to the occurrence, she had commenced to slow her car down because of the presence of two children in the vicinity of the intersection and that she did not give a hand signal to indicate to others following her that she intended to stop. Defendant was driving his car in the same direction, at this same time, and was following immediately behind the Bethel vehicle. The windshield of his car was also splashed with slush and by the time the automatic wipers had cleared the slush from the windshield, he was too close to the Bethel car to avoid a rear end collision with it. At the time of the collision, the Bethel car had come to a complete stop at the intersection.

The pre-trial order entered in the case defined the issues as follows: "(a) Whether or not the defendant operated his automobile in a careless and negligent manner in causing the automobile accident. (b) Whether or not the plaintiff Bethel was guilty of contributory negligence in said accident or whether or not said accident was unavoidable. (c) The nature and extent of injury and damage suffered by plaintiff Bethel."

The Court below instructed the jury upon all of these issues as well as upon the applicable city ordinance and the jury returned a verdict in favor of the defendant. However, no special questions were submitted to the jury and it is, therefore, impossible to determine the basis for the jury's verdict. It could have found no negligence on the part of the defendant, negligence on the part of the defendant and contributory negli-

gence on the part of plaintiff Bethel or that the accident was unavoidable.

■ Clearly, contributory negligence on the part of plaintiff Bethel was one of the important issues in the case. It was pleaded as an affirmative defense and so recognized and determined by the parties and the Court in the pre-trial order. We agree with the plaintiffs, and it is well settled, that instructions to the jury should be confined to the issues raised by the pleadings in the case and the facts developed by the evidence in support of those issues.[1] It is error to instruct the jury upon issues raised by the pleadings and, as in this case, further defined by the pre-trial order, unless there is evidence introduced to support them.[2]

■ The trial Court, in its instructions carefully explained the defense of contributory negligence, the proof necessary to sustain the defense and the effect of a finding by the jury in favor of the defendant on that issue. In this same connection, the court quoted the applicable parts of a Denver City Ordinance,[3] which is the instruction complained of here, and stated that a violation thereof is negligence per se but that such a violation should not be considered by the jury unless it was the proximate cause of the accident. Plaintiffs urge that there was insufficient evidence in the case to justify the giving of an instruction on the ordinance and the effect of a violation of it and therefore the Court committed reversible error. We do not agree, but, rather agree with the defendant in his argument that it was for the jury to determine whether under the circumstances, an appropriate signal of her intention to stop was given by plaintiff Bethel.

This jury question was sufficiently raised by plaintiff Bethel's own admission that she did not give a hand signal to indicate her intention to slow down or stop. It is true that the record is silent as to her use of a mechanical device or signal lamp to give such a warning but this lack of evidence could not take from the jury the factual question of compliance with, or violation of, the city ordinance in view of her own admission and the framing of the issue of contributory negligence in the pleadings and pre-trial order. Under these circumstances, we think it would have been error for the Court below to refuse to give an instruction on the city ordinance.

■ Plaintiffs next contend that it was reversible error for the court to permit plaintiff Bethel's personal physician to testify at the trial over her objection on the ground of doctor-client privilege. In this connection, the defendant argues that the privilege was waived under the provisions of Fed.R. Civ.P. 35(b) (2), 28 U.S.C.A.[4] Plaintiffs admit that all of the conditions con-

1. Garbarino v. Union Savings & Loan Ass'n, 107 Colo. 140, 109 P.2d 638, 132 A.L.R. 1480; Denver Tramway Corporation v. Andersen, 10 Cir., 54 F.2d 214; 53 Am.Jur., Trial, § 574, pages 452–454.

2. Foster v. Feder, 135 Colo. 585, 316 P.2d 576; Greenwood v. Kier, 125 Colo. 333, 243 P.2d 417; 53 Am.Jur., Trial, § 579, pages 455–457.

3. "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner hereinafter provided to the driver of any vehicle to the rear of such vehicle.
   "Signals by Hand and Arm or Signal Devices. Any stop or turn signal when required herein shall be given by means of the hand and arm as hereinafter provided, or by a signal lamp or lamps, or mechanical signal device of a type approved by the state of Colorado, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both from the front and rear of such vehicle, then such signals must be given by such a lamp, lamps or mechanical signaling device."

4. Rule 35(b) (2) provides:
   "By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

**204**

stituting a waiver under Rule 35(b) (2) are present but contend that state law is controlling and under their interpretation of Colorado law [5] the testimony should have been excluded on the basis of privilege.

All that need be said concerning this point is that the Supreme Court has held Rule 35 is a rule of procedure, rather than one of substantive law, and should prevail over a contrary state rule.[6] Accordingly, even if Colorado law is to the contrary as plaintiffs contend, we must conclude that the privilege was waived since all of the conditions giving rise to a waiver under Rule 35(b) (2) are met.

Affirmed.

5. Colo.Rev.Stat.1953, 153–1–7(4) ; Riss & Co. v. Galloway, 108 Colo. 93, 114 P.2d 550, 135 A.L.R. 878.

6. Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479; Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 525, at page 538, 78 S.Ct. 893, 2 L.Ed.2d 953, footnote 12.